825 F.2d 410
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard BOWLIN, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 86-3751
 United States Court of Appeals, Sixth Circuit.
 Aug. 7, 1987.
 
 Before KENNEDY and NELSON, Circuit Judges, and WEBER,* District Judge.
 PER CURIAM.
 
 
 1
 Petitioner Richard Bowlin ('petitioner') appeals the denial by the Benefits Review Board ('the BRB') of his claim for black lung benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. The Administrative Law Judge ('the ALJ') found that the evidence was insufficient to invoke the rebuttable presumption of total disability due to pneumoconiosis arising out of coal mine employment by any of the means specified in 20 C.F.R. Sec. 727.203(a). The BRB affirmed the ALJ's decision. Petitioner claims that the BRB should have credited a qualifying ventilatory study and found that petitioner had invoked the presumption of total disability. We find the decision of the ALJ to be supported by substantial evidence and we affirm.
 
 
 2
 Petitioner is a seventy-four year old man. He attended school through the eighth grade and began working in the mines when he was sixteen. He stopped working in the mines in 1962 because he was not able to do the work. He worked as a janitor until 1973 and after that he performed some work as a watchman in 1978. Petitioner did smoke but claims that he has not smoked in twenty years. He claims that he has trouble sleeping and that he only does so while in an upright position in a chair.
 
 
 3
 Petitioner filed his claim for black lung benefits on May 10, 1974. The claim was denied by the Office of Workers' Compensation Programs several times, most recently on April 10, 1980. On August 14, 1981, the claim was referred to the ALJ for a hearing. The hearing was held in June of 1983. The ALJ issued an order denying petitioner's claim on May 31, 1984. The ALJ found that petitioner had failed to introduce evidence sufficient to invoke the presumption of total disability due to pneumoconiosis provided by 20 C.F.R. Sec. 727.203(a). Petitioner appealed the ALJ's decision and the BRB affirmed the denial of benefits. He appeals the denial of his claim.
 
 
 4
 The BRB must affirm the decision of the ALJ if it is supported by substantial evidence, is rational, and is in accordance with the law. See O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359 (1965); 33 U.S.C. Sec. 921(b)(3), as incorporated by 30 U.S.C. Sec. 932(a). Substantial evidence has been defined as more than a mere scintilla. It means that amount of evidence that a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971). We find that there is substantial evidence to support the ALJ's findings and that the BRB correctly affirmed the decision of the ALJ denying benefits.
 
 
 5
 Petitioner proved at least ten years of coal mine employment. Section 727.203(a) provides that a miner who engaged in coal mining for at least ten years is presumed to be totally disabled due to pneumoconiosis arising from coal mine employment if any one of the criteria set forth in subsections (a)(1), (2), (3), and (4), is met. The claimant bears the burden of proof. Subsection (a)(1) provides that the presumption may be raised if a chest x-ray establishes the existence of pneumoconiosis. Only one of the x-rays submitted into evidence met the standards for establishing the existence of pneumoconiosis. The ALJ found that this x-ray did not invoke the presumption because a 'B' reader had reinterpreted the x-ray to be negative. Greater weight may be accorded to 'B' readers' interpretations because these readers are considered to have greater expertise. See Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1114 n.3 (6th Cir. 1984), cert. denied, 471 U.S. 1116 (1985).
 
 
 6
 The presumption may be invoked under subsection (a)(2) if qualifying ventilatory studies establish the presence of chronic respiratory or pulmonary disease. Qualifying studies are those that indicate a FEV 1 and a MVV which are equal to or less than the values specified in the subsection. Petitioner presented one ventilatory study with qualifying values. The ALJ must consider the validity of a medical opinion before invoking the interim presumption, however, Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 255 & n.6 (6th Cir. 1983), and in this case the physician's remarks indicated that the validity of the ventilatory study was uncertain. The ALJ thus discredited the only qualifying study on the basis of the physician's remark that 'FVC manuevers [sic] were not reproducible, so validity is uncertain.' Joint Appendix at 19. Although the ALJ did not analyze the validity of the ventilatory study in light of the applicable regulations, 20 C.F.R. Sec. 718.103 and Appendix B to Part 718, the specific quality standards are not exclusive. The ALJ was entitled to discount the study on the ground that the physician who performed the study questioned its validity. Substantial evidence supports the ALJ's finding that the presumption had not been invoked under subsection (a)(2).
 
 
 7
 The ALJ's findings that the presumption had not been invoked pursuant to subsections (a)(3) or (a)(4) are also supported by substantial evidence. Subsection (a)(3) provides that the presumption is invoked when blood gas studies qualify. The ALJ found that the only blood gas study in evidence did not qualify. Under subsection (a)(4), a claimant may invoke the presumption if other relevant evidence establishes the presence of a totally disabling respiratory or pulmonary impairment. Petitioner presented no documented evidence that he was totally impaired by a respiratory or pulmonary disease.
 
 
 8
 We find the decision of the ALJ to be supported by substantial evidence and we affirm the denial of black lung benefits.
 
 
 9
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 10
 I agree with the court that the ALJ used the wrong regulations in evaluating the quality of the ventilatory study that met the values specified in 20 C.F.R. Sec. 727.203(a)(2), but I am unable to tell, from this record, whether that error affected the result of the case. Accordingly, I would remand the case to let the ALJ evaluate the claimant's evidence under the applicable regulations.
 
 
 11
 Twenty C.F.R. Sec. 727.206, captioned 'Quality standards applicable to evidence,' provides unequivocally that ventilatory study evidence 'submitted after the effective date of the revised Part 718 [April 1, 1980] shall be evaluated as provided in that part.' (emphasis supplied). The ALJ did not evaluate the ventilatory study under Part 718, as he was required to do; he evaluated it, instead, under Sec. 410.430.
 
 
 12
 The latter section contains no presumption that spirometric tests performed to measure ventilatory function have been administered properly. Part 718, on the other hand, sets forth detailed requirements for the administration and reporting of such tests, and provides that '[i]t shall be presumed, in the absence of evidence to the contrary, that these requirements have been met.' 20 C.F.R. Sec. 718.103(a) Whether the evidence in this case was sufficient to rebut that presumption as to any of the spirometric tests strikes me as a question that ought to be answered, in the first instance, by the ALJ.
 
 
 13
 The physician who remarked that the validity of the qualifying ventilatory study was 'uncertain,' a Dr. R. Bradford Camp, Jr., was not, I believe, the person who actually administered the tests. The record indicates that the tests were given on the morning of November 1, 1982, at the Pulmonary Function Laboratory of Oak Ridge Hospital, by a person named S. Bean. The claimant returned to Dr. Camp's office later that day, according to the record, and Dr. Camp apparently attempted to reproduce the 'forced vital capacity' test in his office. Dr. Camp's office notes describe the result of his test as 'normal,' but I can find in the record no detailed report of what Dr. Camp actually did; and in the absence of the kind of documentation required by 20 C.F.R. Sec. 718.103(a), I am not sure it ought to be presumed that Dr. Camp's test was administered in accordance with the standards required by the regulations.
 
 
 14
 Dr. Camp interpreted the results of the test performed in the hospital as suggesting 'a mild obstructive ventilatory impairment.' Such an impairment, I assume, would have supported a presumption in favor of an award of benefits here, if the disease met the durational requirements set forth in 20 C.F.R. Sec. 410.412(a)(2), given the fact that the readings obtained in the hospital laboratory came within the limits specified in 20 C.F.R. Sec. 727.203(a)(2). The only reason there is a question about the hospital test results is that Dr. Camp added a note saying 'the FVC maneuvers were not reproducible, so validity is uncertain.' If there was a conflict between Dr. Camp's test results and the hospital's test results, I think the conflict ought to be resolved by the ALJ under Part 718.
 
 
 
 *
 The Honorable Herman Jacob Weber, United States District Judge for the Southern District of Ohio, sitting by designation